ANDREA T. MARTINEZ, Acting United States Attorney (#9313)
ADAM ELGGREN, Assistant United States Attorney (#11064)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

**SEALED**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON ARNOLD PATEY,<br><br>Defendant. | INDICTMENT<br><br>Counts 1-5: 18 U.S.C. § 1343, Wire Fraud;<br><br>Count 6-10: 18 U.S.C. § 1957, Money Laundering<br><br>Case: 2:21-cr-00529<br>Assigned To : Campbell, Tena<br>Assign. Date : 12/22/2021 |

The Grand Jury charges:

A.  **BACKGROUND**

At all times relevant to this Indictment:

1. AARON PATEY was a resident of Utah, with his principal residence in Utah County.

2. PATEY was an owner and operator of Universal Skies, LLC, a corporation which was organized in Utah in about December of 2013 with its principal place of business in Utah County. Universal Skies was the nominal owner of PATEY's interests in several other businesses.

3. PATEY was an owner and operator of PSD International, LLC (PSDI), which was organized in Utah in about March of 2014 with its principal place of business in Utah County.

4. PATEY was an owner and operator of Evergreen Strategies, LLC, which was organized in Nevada in about March of 2015 with its principal place of business in Utah County.

5. PATEY was an owner and operator of Relay Advanced Materials, Inc., which was organized in Utah in about January of 2017 with its principal place of business in Utah County.

6. Graphene was an advanced, carbon-based engineering material with numerous potential applications due to its electrical conductivity, high tensile strength and transparency. It was considered to be a cutting-edge technology that could be used to great effect in products such as cell phone batteries and solar power cells.

## COUNTS 1-5
18 U.S.C. § 1343, Wire Fraud

B. <u>THE SCHEME TO DEFRAUD</u>

7. Beginning in or around 2016 and continuing until in or around April 2018, in the District of Utah and elsewhere,

AARON ARNOLD PATEY,

defendant herein, knowingly and with intent to defraud, devised and executed a scheme and artifice to obtain monies, funds, credits, assets and

other property owned by and in the custody and control of others by means of materially false and fraudulent pretenses, representations and promises, and the concealment of material facts.

8. The fraudulent scheme operated and was carried out, in substance, as three secondary schemes, as follows:

9. The Short-Term Loan Scheme

   a. Defendant PATEY would make representations to prospective short-term loan lenders to induce them to lend him money, knowing those representations to be false, and would conceal material facts from the lenders knowing that those facts would negatively affect the lenders' decisions.

   b. In particular, defendant PATEY made the following material false statements that he knew to be false when he made them, and made the following material omissions and concealment of facts: Defendant PATEY represented to investor A.A. (an individual whose full name is known to the Grand Jury) that PSDI was a profitable company, that PATEY needed a short-term loan in order to pay the cost of producing goods from overseas, which goods would then be sold at a profit, and A.A. would realize a prompt return on investment. Based on those false representations, A.A. agreed to loan PATEY $200,000, and proceeded to transfer the money to PATEY. In fact, PSDI was not a successful company, and PATEY immediately used the money he obtained from

3

A.A. to pay off other short-term lenders, and to cover the expense of cash bonuses given to PSDI employees. A.A. did not receive money back for the loan, and would not have granted the loan but for the false statements and material omissions made by PATEY;

10. <u>The Relay Stock Scheme</u>

   a. Defendant PATEY would make false representations and material omissions related to his companies, PSDI and Relay, and their profitability, and about the business in which the companies were engaged related to the production and sale of graphene, in order to induce prospective investors into giving him money in exchange for stock in Relay.

   b. In particular, Defendant PATEY made the following material false statements that he knew to be false when he made them, and made the following material omissions and concealment of facts:

      i. PATEY represented to A.A. that his company PSDI was a successful company. PATEY represented that he was starting a new company called Relay and that he already had $20 million worth of graphene in Relay's warehouse. PATEY represented that people affiliated with the University of Utah had analyzed Relay's graphene and determined it to be of high quality. Based upon these representations, A.A. invested $500,000 with PATEY in exchange for an interest in Relay. In fact, Relay and PATEY

4

only owned approximately $80,000 worth of graphene, and no analysis of such graphene was ever performed by anyone affiliated with the University of Utah. PSDI was not a successful company. PATEY used the money provided by A.A. to pay off other lenders, to make a donation to a charity, and for other non-revenue-generating costs. A.A would not have invested in Relay but for the false statements and material omissions made by PATEY;

ii. PATEY represented to P.H. (an individual whose full name is known to the Grand Jury) that he had a contract with a buyer to provide graphene in exchange for $100 million, but that he needed additional funds. PATEY represented that people affiliated with the University of Utah had analyzed Relay's graphene and determined it to be of high quality. PATEY also made additional false representations and material omissions related to Relay and PSDI, including that PSDI was a successful company, to induce an investment from P.H. Eventually, P.H. gave PATEY $500,000 in return for an interest in Relay. In fact, approximately $470,000 of the $500,000 investment was used to pay off another short-term lender to PSDI, PSDI was not a successful companyand no analysis of Relay's graphene was ever performed by anyone affiliated with the University of Utah. P.H.

5

would not have invested in Relay but for the false statements and material omissions made by PATEY;

    iii. PATEY represented to R.B. (an individual whose full name is known to the Grand Jury) that PATEY had already purchased $3 million worth of graphene. PATEY represented that money from R.B. would be combined with other investor money to purchase graphene worth $50 million. PATEY also represented that PSDI was a successful company with millions in revenue. Based on these representations and on omissions, R.B. gave PATEY $500,000 in exchange for an interest in Relay. In fact, PSDI was not a successful company, PATEY had not invested $3 million of his own money in graphene, and most of the money provided by R.B. was used to pay off other debts and for other non-revenue-generating costs. R. B. would not have invested in Relay but for the false statements and material omissions made by PATEY;

11. <u>The Commodities Scheme</u>

    a. Defendant PATEY would make representations to a prospective lender to induce them to lend him money for the acquisition of commodities, knowing those representations to be false, and would conceal material facts from the lenders knowing that those facts would negatively affect the lenders' decisions.

b. In particular, defendant PATEY made the following material false statements that he knew to be false when he made them, and made the following material omissions and concealment of facts: Defendant PATEY represented to A.A. that PATEY was in the process of obtaining $100 million in commodities from overseas and needed $150,000 in order to complete shipment of the goods. PATEY promised a return of $160,000 within 30 days. Based on those false representations and others, A.A. agreed to loan PATEY $150,000, and proceeded to transfer the money to PATEY. In fact, PATEY did not have a shipment of commodities coming from overseas, and immediately used the money he obtained from A.A. to purchase a Bentley automobile. A.A. would not have given PATEY the money but for the false statements and material omissions made by PATEY;

C. <u>EXECUTION OF THE SCHEME – USE OF WIRES</u>

12. On or about the following dates, in the District of Utah and elsewhere, Defendant AARON PATEY, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused to be transmitted by means of interstate wire writings, signs, signals, pictures and sounds, to wit:

| COUNT | DATE | USE OF WIRES |
|---|---|---|
| Count 1 | 12/27/2016 | Wire transfer of $200,000 from the Central Bank account ending in …3580 of A.A., to the Wells Fargo account ending in …8360 of Evergreen Strategies, LLC, controlled by Aaron Patey (see Paragraph 9 above, incorporated herein by reference) |
| Count 2 | 2/22/2017 | Wire transfer of $190,000 from the Bank of America account ending in …7345 of A.A., to the Wells Fargo account ending in …8360 of Evergreen Strategies, LLC, controlled by Aaron Patey (see Paragraphs 10(a) and 10(b)(i) above, incorporated herein by reference) |
| Count 3 | 2/24/2017 | Wire transfer of $500,000 from the Bank of the West account ending in …9715 of P.H. to the Wells Fargo account ending in …8360 of Evergreen Strategies, LLC, controlled by Aaron Patey (see Paragraphs 10(a) and 10(b)(ii) above, incorporated herein by reference) |
| Count 4 | 1/20/2017 | Wire transfer of $300,000 from the Citibank account ending in …5061 of R.B. to the Wells Fargo account ending in …8360 of Evergreen Strategies, LLC, controlled by Aaron Patey (see Paragraphs 10(a) and 10(b)(iii) above, incorporated herein by reference) |
| Count 5 | 3/14/2017 | Wire transfer of $27,000 from the Wells Fargo account ending in …6786 of A.A., to the Wells Fargo account ending in …8360 of Evergreen Strategies, LLC, controlled by Aaron Patey (see Paragraph 11 above, incorporated herein by reference) |

All in violation of 18 U.S.C. § 1343, Wire Fraud.

## COUNTS 6-10
18 U.S.C. § 1957, Money Laundering

13.   On or about the dates listed below, in the District of Utah and elsewhere,

AARON ARNOLD PATEY,

Defendant herein, did engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, in the manner described below, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343,

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| Count 6 | 12/27/2016 | Check 1084 in the amount of $111,600 drawn on the Evergreen Strategies, LLC Wells Fargo account ending in …8360 controlled by Aaron Patey and made out to S.P. (an individual whose full name is known to the Grand Jury) (see Paragraph 9 and Count 1 above, incorporated herein by reference) |
| Count 7 | 2/23/2017 | Check 1099 in the amount of $20,000 drawn on the Evergreen Strategies, LLC Wells Fargo account ending in …8360 controlled by Aaron Patey and made out to Operation Underground Railroad (see Paragraphs 10(a) and 10(b)(i) and Count 2 above, incorporated herein by reference) |
| Count 8 | 2/27/2017 | Wire transfer in the amount of $471,955 from the Evergreen Strategies, LLC Wells Fargo account ending in …8360 controlled by Aaron Patey and delivered to the Mountain America Federal Credit Union ending in …7094 account of T.M. (an individual whose full name is known to the Grand Jury) (see Paragraphs 10(a) and 10(b)(ii) and Count 3 above, incorporated herein by reference) |
| Count 9 | 1/23/2017 | Intrabank transfer using the interstate wires in the amount of $80,000 from the Evergreen Strategies, LLC Wells Fargo account ending in …8360 controlled by Aaron Patey and delivered to the Wells Fargo account ending in …3932 of PSDI, LLC |

|  |  | controlled by Aaron Patey (see Paragraphs 10(a) and 10(b)(iii) and Count 4 above, incorporated herein by reference) |
|---|---|---|
| Count 10 | 3/14/2017 | Check 1009 in the amount of $198,257.98 drawn on the Evergreen Strategies, LLC Wells Fargo account ending in …8360 controlled by Aaron Patey and made out to Specialized Sales and Leasing for the purchase of a 2016 Bentley Flying Spur automobile (see Paragraphs 11 and Count 5 above, incorporated herein by reference) |

14.   All in violation of 18 U.S.C. § 1957, Money Laundering.

NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense violating 18 U.S.C. § 1343, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to:

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

- A money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL:

/S/

FOREPERSON OF THE GRAND JURY

ANDREA T. MARTINEZ
Acting United States Attorney

ADAM ELGGREN
Assistant United States Attorney